UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                  Case No. 8:14-cr-496-T-17AEP

ROBERT WILLIAM BARTON,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This MATTER is before the Court on Defendant Robert William Barton's ("Defendant") Motion to Suppress Evidence ("Motion") (Dkt. No. 46), which was referred to the undersigned by the Honorable Elizabeth A. Kovachevich for a Report and Recommendation. By his motion, Defendant requests suppression of any and all statements allegedly made by him to investigators on August 5, 2014, as well as any evidence produced from those statements. Defendant argues that the alleged statements should be suppressed because (1) the statements were made while Defendant was in custody and prior to being read his *Miranda*[1] rights, and (2) the alleged statements were the product of unconstitutional coercive law enforcement tactics. Specifically, Defendant asserts that law enforcement unlawfully induced his alleged statements by threatening that "unless someone confessed to the gun, Lisa Moore [the passenger of the vehicle driven by Defendant] would also be taken into custody and her daughter would be handed over to the Florida Department of Children and Families" ("DCF"). *Id.* In response, the government asserts that Defendant was properly

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Mirandized* prior to his alleged statements, that law enforcement did not commit the tactics as argued by Defendant, and that even had law enforcement committed the tactics as alleged by Defendant, such tactics are not coercive under binding precedent in *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001). (*See* Dkt. No. 45.) The parties appeared before the Court for an evidentiary hearing on March 1, 2016, during which the United States called as witnesses Tampa Police Department Lieutenant William Gergel ("Gergel") and Detective Geraldine Charles ("Charles"), while, in turn, Defendant testified in support of his Motion. For the reasons stated herein, the undersigned finds that Defendant was properly advised of his *Miranda* rights prior to any custodial questioning and that no unconstitutional coercive tactics were utilized by law enforcement to induce Defendant's alleged statements. Thus, the undersigned recommends that Defendant's Motion be denied.

**I. Background**

On August 5, 2014, Gergel encountered Defendant driving a vehicle with a license plate reported as stolen. Gergel called in his findings to other officers and initiated a traffic stop. Located inside the vehicle was Defendant in the driver's seat, Lisa Moore ("Moore") in the passenger seat, and Moore's adolescent daughter in the back seat behind the driver's seat. Soon after Gergel initiated the traffic stop two other officers, Charles and Deputy Bonin ("Bonin") arrived separately to assist with the investigative stop. As Gergel was conducting an inquiry with Defendant at the driver's side door, Charles stood at the passenger side of the car to ensure that Moore would not pose a threat during the investigative stop. Charles observed on the floor board next to Moore's daughter's feet what appeared to be a gun. Based upon Charles's observation of an alleged gun, all three occupants were ordered out of the vehicle and separated from one another. Defendant was taken by Gergel, and Moore and her daughter were taken by

Bonin, while Charles searched the vehicle. Charles discovered during her search a BB gun located on the floor board where Moore's daughter was seated, and under the passenger seat where Moore was seated, a .22 caliber revolver, which is the alleged gun in the underlying indictment against Defendant. During the traffic stop, it was discovered that Moore may have violated her probation by travelling outside of Pasco County without prior approval. The preceding facts are largely uncontested, but what occurred after Charles's discovery of the .22 caliber gun are disputed and are central to the resolution of Defendant's Motion.

Charles testified that after completing her search of the vehicle she then placed Defendant into her patrol car to initiate an interview about the .22 caliber gun.[2] Charles noted that she had never knew or heard of Defendant prior to first encountering him on August 5, 2014. Charles unequivocally stated that prior to conducting any questioning of Defendant about the .22 caliber gun she advised Defendant of his *Miranda* rights by reading from a *Miranda* warnings card.[3] Charles further stated that after she advised Defendant of his *Miranda* rights Defendant did not request an attorney, and he agreed to answer her questions. Charles detailed that when she questioned Defendant about the .22 caliber gun, Defendant stated, "Ok, I will say it is mine." Charles explained that she responded to Defendant by stating that she did not need him to tell her that the gun was his, but rather he needed to only to tell the truth about the gun. Charles further explained that Defendant reiterated that the gun was his and that he obtained the gun from a man in Zephyrhills. Charles acknowledged that she had a *Miranda* waiver form

---

[2] It must be noted that Charles also testified that when she located the gun the handle of the gun was in plain view because the gun was not entirely under the seat.

[3] Charles's *Miranda* warnings card was not offered into evidence, nor was any other record evidence provided to demonstrate the substance and sufficiency of Charles's *Miranda* warnings. However, Defendant has not challenged the sufficiency of Charles's alleged *Miranda* warnings. Rather, Defendant is challenging whether any such warnings were given at all.

in the trunk of her car, but that it was her routine and practice not to use the form when interviewing an individual handcuffed in the back of her car. Charles indicated that she primarily uses the forms when conducting interviews in the office. Charles flatly denied ever telling Defendant that if law enforcement did not discover whom the gun belonged to, then Moore would be arrested and her daughter would be placed into DCF custody.

Gergel testified that he did not participate in the search of the vehicle and specifically stated that he did not participate in any questioning of Defendant about the gun. Gergel further denied ever stating to Defendant that Moore would be arrested depending upon what Defendant told him about the gun. Gergel explained that although he did not participate in the recovery of the gun or in any questioning of Defendant or Moore about the gun, he learned that the gun had an obliterated serial number, that Defendant admitted to Charles that the gun belonged to him, and that Moore told Bonin that the gun belonged to Defendant. Gergel also explained that if Defendant and Moore had made no statements about the gun, then depending upon the circumstances, both Defendant and Moore could have been arrested for unlawful possession of the gun.

Defendant testified that he was handcuffed and placed into the back of a patrol car for approximately 15 to 20 minutes before anyone questioned him. He explained that no one ever advised him of his *Miranda* rights prior to being questioned about the gun, and that the first person to ask him about the gun was Gergel, who asked him how to open the gun because Gergel needed to secure it. Defendant explained that he told Gergel he knew nothing about the gun. Defendant further explained that eventually Charles asked him about the gun and that he originally told her he knew nothing about the gun, but that Charles told him that if he doesn't tell her about the gun Gergel is going lock everyone up. Defendant explained that he told

Charles that they cannot arrest Moore because her daughter just recently and tragically had her father commit suicide in her presence, and it would devastate the child if Moore is arrested in her presence.  Defendant stated that he then asked to speak to Gergel, who then came back to the car, opened the door, and asked Defendant if he wanted to tell him about the gun.  Defendant detailed that he told Gergel he would admit that the gun was his if Gergel did not arrest Moore, and that Gergel responded that whether he would arrest Moore depended upon what Defendant would tell him about the gun, and what Moore's probation officer would tell him.  Defendant further stated that after talking to Gergel and waiting for a significant period of time in the back of the police car, Charles then came back and asked him if he wanted to tell her about the gun, to which he responded that he would say the gun was his if they would not arrest Moore.  Defendant explained that Charles responded by stating "I don't need you to tell me that the gun is mine, I need you to tell the truth," to which the Defendant again reiterated that the gun belonged to him.  Defendant stated he was then eventually placed in another vehicle to be transported to jail, but just prior to being placed in the transport vehicle he was advised for the first time of his *Miranda* rights.

## II.  Findings of Fact and Conclusions of Law

Defendant argues that his alleged statements about the gun should be suppressed based upon the officers' failure to advise him of his *Miranda* rights prior to any custodial questioning about the gun, and based upon the officer's use of coercive tactics and threats to induce him into making the alleged statements about the gun. At the core of the issues raised by Defendant is a clear conflict in the testimony, which necessitates that the Court make a credibility determination dispositive of the outcome of Defendant's Motion.  The two primary questions that are at conflict based upon the testimony are: (1) did Charles advise Defendant of his

*Miranda* rights as she claimed, or did Charles fail to advise Defendant of his *Miranda* rights as Defendant asserts; and (2) did, as Defendant claimed, Gergel and Charles unlawfully coerce Defendant into providing statements about the gun by telling Defendant that Moore could be arrested depending upon what Defendant told them about the gun, or was no such threat to arrest Moore ever made to Defendant as Gergel and Charles steadfastly assert.

Although the Court's credibility findings are crucial to the ultimate resolution of Defendant's Motion, a credibility assessment is not vital to the determination of whether law enforcement unlawfully coerced Defendant into making his alleged statements about the gun by allegedly telling Defendant, in sum, that unless someone confessed to the gun then Defendant and/or Moore would be arrested and Moore's daughter would be placed into DCF's custody. Rather, even if the Court accepted as true that law enforcement made the alleged threat to arrest Moore, the key question is whether the threat was unconstitutionally coercive. And, whether any alleged threat to arrest Moore was unconstitutionally coercive depends entirely upon "whether the state had probable cause to believe that [Moore] had committed a crime at the time that the threat was made . . . ." *Haley*, 255 F.3d at 1297.

Here, there is little doubt that at the time any alleged threat regarding Moore's potential arrest could have been made to Defendant, there was ample probable cause to arrest Moore for unlawful possession of the gun. Specifically, law enforcement had probable cause to arrest Moore for unlawful possession of a firearm given the circumstances that Moore was a passenger in a vehicle with a license plate reported as stolen; the unsecured, loaded gun was located under Moore's seat in the vehicle with the gun's handle in plain view; the gun's serial number was obliterated; Moore was possibly in violation of her probation by leaving Pasco County; and there were no other indicators of ownership of the gun. *See* §§ 790.01(2),

790.25(2)(l) and (5) (prohibiting a person without a proper license from carrying a concealed gun on or about his or her person, and prohibiting possession of a gun in a vehicle, when that gun is not securely encased); *see also Maryland v. Pringle,* 540 U.S. 366 (2003) (upholding finding of probable cause to arrest all three occupants of a vehicle (specifically including the front seat passenger of the vehicle) for possession of cocaine when the cocaine was located in the back seat area of car).  Regardless of the veracity of Defendant's assertion that law enforcement threatened Moore's arrest to induce him into making a statement about the gun, the tactics as alleged by Defendant simply do not rise to the level of unconstitutional coercion because the officers had more than sufficient probable cause to believe that Moore unlawfully possessed the gun when the alleged threat could have been made.  Although a determination about the veracity of Defendant's assertion that the officers threatened Moore's arrest is unnecessary to resolve whether Defendant was unconstitutionally coerced, such a determination is highly probative in deciding whether Defendant was properly advised of his *Miranda* rights prior to any custodial questioning.

The issue of whether Defendant was properly advised of his *Miranda* rights prior to any custodial questioning about the gun is entirely contingent upon a credibility determination. Defendant testified in no uncertain terms he was not advised of his *Miranda* rights prior to any custodial questioning about the gun.  While in stark contrast, Charles unequivocally testified that prior to questioning Defendant about the gun she advised Defendant of his *Miranda* rights by reading from her *Miranda* warnings card.  If Defendant's testimony was accepted as true by the Court, then Defendant's alleged statements about the gun should be suppressed.  However, I cannot accept Defendant's testimony and find it not credible for several reasons.

As an initial matter, Defendant's credibility must be subject to question because he is a convicted felon, and obviously has the most to gain in this matter.  Whereas, Charles has no obvious vested interest in the outcome of this matter, and thus has no known reason to mislead the Court.

7

Notably, Charles never knew of Defendant prior to the traffic stop on August 5, 2014. Further, this is not just a circumstance of Charles's version of events against Defendant's, rather it is Defendant's version of events in direct contradiction to both Charles's and Gergel's testimony. Significantly, Defendant testified that both Charles and Gergel threatened him with an arrest of Moore, while both Charles and Gergel flatly denied ever uttering such a threat against Moore. Additionally, Defendant testified that Gergel was the first to ask him about the gun, while both Charles and Gergel testified that only Charles questioned Defendant about the gun. There is simply no evidence of record[4] to demonstrate an improper motive for both Charles and Gergel to deceive the Court about the events on August 5, 2014 resulting in Defendant's arrest. Rather, if Charles and Gergel intended to be deceptive about whether Defendant was advised of his *Miranda* rights, they surely could have claimed that Gergel witnessed Charles providing Defendant with his *Miranda* rights. For these reasons, I reject as not credible Defendant's testimony and find that Charles did properly advise Defendant of his *Miranda* rights prior to any custodial questioning about the gun. Thus, I find that Defendant's alleged statements about the gun were voluntarily made because Defendant was properly advised of his *Miranda* rights and Defendant was not unconstitutionally coerced into making his alleged statements.

---

[4] Defendant suggests that Charles's failure to obtain a written *Miranda* waiver cuts at Charles's credibility. However, the court finds Charles's testimony entirely credible that she did not obtain the waiver form because it is her practice not to use the form when conducting an interview with an individual handcuffed in her patrol car.

Accordingly, after due consideration and for the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Evidence (Dkt. No. 46) be **DENIED**.

**IT IS SO REPORTED** in Tampa, Florida, this 3rd day of March, 2016.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

The parties have until **Monday, March 7, 2016**, to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Hon. Elizabeth A. Kovachevich
Counsel of Record