UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.   CASE NO. 8:14-CR-496-T-17AEP

ROBERT WILLIAM BARTON.

_____/

ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 46 | Motion to Suppress |
| Dkt. 45 | Response |
| Dkt. 49 | Transcript |
| Dkt. 54 | Report and Recommendation |
| Dkt. 62 | Objection |

The assigned Magistrate Judge has entered a Report and Recommendation in which it is recommended that Defendant Barton's Motion to Suppress be denied. After referral, the assigned Magistrate Judge conducted an evidentiary hearing on March 1, 2016.

Defendant Robert William Barton is charged with a violation of 18 U.S.C. Sec. 922(g)(1), and 924(e)(1) (Dkt. 1), possession of a firearm and ammunition by a convicted felon.

In the Motion to Suppress, Defendant Barton moves to suppress any and all statements made by Defendant Barton to investigators on August 5, 2014, as well as any evidence produced from those statements. Defendant Barton was arrested on August 5, 2014 following a traffic stop.

Case No. 8:14-CR-496-T-17AEP

Defendant Barton argues that, while Defendant Barton was in custody and prior to when Defendant Barton was given Miranda warnings, law enforcement officers threatened Defendant Barton and told him that unless someone confessed to the gun, the passenger in the vehicle, Lisa Moore, would also be taken into custody, and Lisa Moore's daughter would be handed over to the Florida Department of Children and Families. In response to these coercive tactics, Defendant Barton stated "I will say it is mine" and after being questioned further, Defendant Barton replied "Okay, it is mine." Defendant Barton contends that the coercive tactics used by law enforcement officers were in violation of Defendant Barton's right against self-incrimination and amount to involuntary statements. Defendant Barton seeks the exclusion of those statements from evidence in the trial of this matter.

The Government responds that Defendant Barton's statements were given after Defendant Barton was given the Miranda warnings, and Defendant Barton was not threatened by law enforcement officers.

The assigned Magistrate Judge conducted an evidentiary hearing on March 1, 2016. At the hearing, Lieutenant William Gergel and Detective Geraldine Charles of the Hillsborough County Sheriff's Office testified, and Defendant Robert William Barton testified.

In the Report and Recommendation, the assigned Magistrate Judge found that Defendant Barton was properly advised of his Miranda rights prior to any custodial questioning and that no unconstitutional coercive tactics were utilized by law enforcement to induce Defendant Barton's alleged statements. The assigned Magistrate Judge recommended that Defendant Barton's Motion to Suppress be denied.

Case No. 8:14-CR-496-T-17AEP

The assigned Magistrate Judge noted the conflict in the testimony, which required a credibility determination dispositive of the outcome of Defendants Motion:

1. Did Charles advise Defendant of his <u>Miranda</u> rights as she claimed, or did Charles fail to advise Defendant of his <u>Miranda</u> rights as Defendant asserts; and

2. Did Gergel and Charles unlawfully coerce Defendant into providing statements about the gun by telling Defendant that [Lisa] Moore could be arrested depending upon what Defendant told them about the gun, or was no such threat to arrest Moore ever made to Defendant as Gergel and Charles steadfastly assert.

As to the alleged unlawful coercion, in the Report and Recommendation, the assigned Magistrate Judge notes:

"Rather, even if the Court accepted as true that law enforcement made the alleged threat to arrest Moore, the key question is whether the threat was unconstitutionally coercive. And, whether any alleged threat to arrest Moore was unconstitutionally coercive depends entire upon 'whether the state had probably cause to believe that [Moore] had committed a crime at the time the threat was made...' <u>Haley</u> 255 F.3d at 1297.

Here, there is little doubt that at the time any alleged threat regarding Moore's potential arrest could have been made to Defendant, there was ample probable cause to arrest Moore for unlawful possession of the gun. Specifically, law enforcement had probable cause to arrest Moore for unlawful possession of a firearm given that Moore was a passenger in a vehicle with a license plate reported as stolen; the unsecured, loaded gun was located under Moore's seat in the vehicle with the gun's handle in plain view; the gun's serial number was obliterated; Moore was possible in violation of her probation by leaving Pasco County, and there were no other indicators of ownership of the gun. <u>See</u> Secs. 790.01(2), 790.25(2)(1) and (5) (prohibiting a person without a proper license from carrying a concealed gun on or about his or her person, and prohibiting possession of a gun in a vehicle, when that gun is not securely encased); <u>see also</u> <u>Maryland v. Pringle</u>, 540 U.S. 366 (2003)(upholding finding of probable cause to arrest all three occupants of a vehicle(specifically including the front seat passenger) for possession of cocaine when the cocaine located in the back seat area of the car).

3

Case No. 8:14-CR-496-T-17AEP

(Dkt. 54, pp. 6-7).

The assigned Magistrate Judge determined that, because the law enforcement officers had more than sufficient probable cause to believe that Moore unlawfully possessed the gun when the alleged threat was made, the alleged tactics did not rise to the level of unlawful coercion.

As to whether Defendant Barton was properly advised of his Miranda rights prior to custodial questioning, the assigned Magistrate Judge noted that this issue is entirely contingent upon a credibility determination. Detective Charles testified that she did give Defendant Barton the Miranda warnings by reading from her Miranda warnings card; Defendant Barton testified that Defendant Barton was not advised of his Miranda rights prior to custodial questioning about the gun. For the reasons enumerated in the Report and Recommendation (Dkt. 54, pp. 7-8), the assigned Magistrate Judge rejected Defendant Barton's testimony as not credible, and found that Defendant Barton's statements about the gun were voluntarily made because Defendant Barton was properly advised of his Miranda rights, and Defendant Barton was not unconstitutionally coerced into making his alleged statements.

Defendant Barton has asserted objections (Dkt. 62) to the Report and Recommendation. Defendant Barton objects to the determination that probable cause existed to arrest the passenger, Lisa Moore. Defendant Barton acknowledges that Thompson v. Haley, 255 F.3d 1292, 1297 (11th Cir. 2001), and its analysis controls, and distinguishes Maryland v. Pringle, 540 U.S. 366 (2003) on the basis that, in this case, the passenger implicated Defendant Barton, and with the alleged confession and the passenger's statements that implicated Defendant Barton, Lieutenant Barton testified that there was no probable cause to arrest Ms. Moore.

Case No. 8:14-CR-496-T-17AEP

In his objections, Defendant Barton further states that Defendant Barton otherwise objects to the factual findings within the Report and Recommendation.

I.      Standard of Review

Federal Rule of Civil Procedure 72 provides the appropriate procedure for district court review of a magistrate judge's report and recommendation. If a party wishes to challenge the recommendation, the party must "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). As the Eleventh Circuit Court of Appeals has explained, the party's objections must "specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." Macort v. Prem, Inc., 208 Fed. Appx. 781, 783 (11th Cir. 2006) (quoting Heath v. Jones, 863 F.2d 815, 822 (11th Cir. 1989)). "It is critical that the objection be sufficiently specific and not a general objection to the report." Id. at 784 (citing Goney v. Clark, 749 F.2d 5, 7 (3d Cir.1984)). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After the Court concludes its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord Local Rule 6.02.

II. Discussion

Defendant Barton objects to the legal conclusion of the assigned Magistrate Judge that there was probable cause to charge Defendant Barton's passenger, Lisa Moore, at the time that the alleged threats were made to Defendant Barton, which allegedly coerced Defendant Barton to confess that the gun found under the front passenger seat of the vehicle Defendant Barton was driving at the time of the traffic stop was Defendant's gun. Defendant Barton has not objected to the manner in which

Case No. 8:14-CR-496-T-17AEP

the assigned Magistrate Judge resolved the issue of whether Defendant Barton was given the Miranda warnings.

The Government denied that any threats were made to Defendant Barton. Lieutenant Gergel and Detective Charles testified at the evidentiary hearing. Defendant Barton also testified at the evidentiary hearing, giving detailed testimony as to the sequence of events during the traffic stop and Defendant Barton's arrest. (Dkt. 49, Direct Examination of Defendant Barton, pp. 51-61).

The Court notes the following testimony (Dkt. 49, pp. 57-60):

Q. So what happens next?  After 20 minutes lapse, who do you come into contact with next?

A. Sgt. Gergel comes over, opens up the door, he tells me he needs the security gun, that he wants to know if I know how to open it.  He says tell me how to open this gun, tell me how you open this gun, we need to secure it.

I tell him, Man, I swear to God, I don't know, call my wife, I'm telling you I don't know anything about this gun, call my wife.

He said right now I'm trying to secure the gun.  That's when the K-9 unit pulled up.  He closed the door, he went right over to the K-9 unit.  I seen him over there, they was by the other car.  They had like a pair of pliers or something, messing with the gun.  That's when Officer Charles came back–

Q. Let me stop you there.  When you say Officer Charles, was that the same female detective that testified in court today?

A. Yes, sir.

Q. Okay.  What happened with your conversation with her?

A. She came back, she opened up the door, she asked me if I knew how to open it.  She said I need to know about this gun.

6

Case No. 8:14-CR-496-T-17AEP

> I said I done told Sarge I don't know anything about the gun, call my wife. That's when they called her back over, she closed the door, she walked over there. Her and the K-9 unit came back to the car and he had some bullets in his hand and there was one that was fired and she said, she opened up the door, she said I need to know who shot the gun, when the gun was fired.
>
> I said Ma'am, I don't know anything about the gun. If you just tell Sarge to call my wife, I'm telling you I don't know anything about this gun.
>
> That's when she said Sarge is going to lock everybody up. I said, well, listen, is there any way that I can talk to Sarge. She said are you going to tell us about the gun, what we need to know about the gun. I said I don't know anything about the gun, can I talk to Sarge. That's when she said—

Q. Just for the record, each time you refer to Sarge you mean Lt. Gergel?

A. Yes, sir. Sgt. Gergel.

Q. What did she tell you next?

A. That's when she said Sarge is going to lock everybody up if you don't own up to the gun. I said well listen, you can't lock Lisa up because her husband had just killed himself a year before this in front of her daughter.

Q. In front of the girl that was present at the scene?

A. Yes. Her 10-year-old daughter. I said you cannot lock her up, her husband just killed himself less than a year ago in front of that baby, you can't do that.

> So she said well, I don't know what to tell you. That's when I said can I talk to Sarge. She closed the door. Sarge came back over, he opened the door, he said Mr. Barton, you want to tell me about the gun? That's when I told him, I said I'll say the gun is mine if you don't take her to jail. He said well, here's the problem, she's got other problems because she's on probation because she's out of county. I said Sarge, you can call her probation officer, we've got permission to be out of county.
>
> He said, I tell you what, depending on what her probation officer tells me and depending on what you tell me, then I'll decide if she goes to jail or not. He closes the door, then waits seem like forever, about an hour. That's when Officer Charles comes back, she opened up the door, she

7

Case No. 8:14-CR-496-T-17AEP

> said you want to tell me about the gun now? I said yeah, I'll say the gun is mine if you all don't take her to jail. She said you didn't talk to Sarge? I said no. She said he called her probation officer and her probation officer said if she don't go to jail tonight, she's got 24 hours to report to her office.
>
> I said okay, well then if you all don't take her to jail, I'll say the gun is mine. She said no, I don't need you to say the gun is mine, I need you to tell me the truth. I said okay, the gun is mine.

(Dkt. 49, pp. 57-60).

Under the Fifth Amendment to the United States Constitution, the Government may not use an involuntary confession against a defendant in a criminal trial. United States v. Thompson, 422 F.3d 1285, 1295 (11th Cir. 2005). The focus of the voluntariness inquiry is "on whether the defendant was coerced by the government into making the statement: 'The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.' " United States v. Mendoza-Cecilia, 963 F.2d 1467, 1475 (11th Cir.1992) (quoting Colorado v. Connelly, 479 U.S. 157, 170, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). "The district court must consider the totality of the circumstances in assessing whether police conduct was 'causally related' to the confession." Id. (quoting Miller v. Dugger, 838 F.2d 1530, 1536 (11th Cir.1988)). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." Id. Government coercion is a necessary predicate to a finding of involuntariness under the Fifth Amendment. "Absent police conduct causally related to the confession, there is ... no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Colorado v. Connelly, 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

Whether a threat to prosecute a third party is coercive depends upon whether probable cause exists to believe that the third party has committed a crime at the time

Case No. 8:14-CR-496-T-17AEP

the threat is made. Martin v. Kemp, 760 F.2d 1244 (11th Cir. 1985). In this case, the issue is what the law enforcement officers knew of Lisa Moore's involvement in the crime charged at the time the alleged threat was made, i.e. before the Defendant Barton gave his confession, and before Lisa Moore gave a statement implicating Defendant Barton. The knowledge that was available to the law enforcement officers was that, prior to the traffic stop, Defendant Barton was driving the vehicle and Lisa Moore was a passenger in the vehicle. During the traffic stop for the stolen tag, the validity of which is not challenged by Defendant Barton, Lt. Gergel advised Defendant Barton that the motor vehicle was going to be impounded and searched. During the traffic stop, Deputy Charles saw the handle of the gun sticking out from under the front passenger seat. Deputy Charles testified that she searched the vehicle, read the Miranda warnings to Defendant Barton, completed a criminal affidavit, and Defendant Barton was taken to jail.

The assigned Magistrate Judge noted that "a credibility assessment was not vital to the determination of whether law enforcement unlawfully coerced Defendant into making the alleged statements by alleged telling Defendant Barton that, unless someone confessed to the gun then Defendant Barton and/or Lisa Moore would be arrested and Moore's daughter would be placed into DCF's custody. Rather, even if the Court accepted as true that law enforcement made the alleged threat to arrest Moore, the key question is whether any alleged threat to arrest Moore was unconstitutionally coercive. And, whether any alleged threat to arrest Moore was unconstitutionally coercive depends upon "whether the state had probable cause to believe that [Moore] had committed a crime at the time that the threat was made...." Haley, 255 F.3d at 1297."

After consideration, the Court overrules Defendant Barton's Objection, and adopts and incorporates the Report and Recommendation by reference. Accordingly, it is

Case No. 8:14-CR-496-T-17AEP

**ORDERED** that Defendant Barton's Objection (Dkt. 62) is **overruled**, the Report and Recommendation (Dkt. 54) is **adopted** and **incorporated by reference**. The Motion to Suppress (Dkt. 46) is **denied**.

**DONE and ORDERED** in Chambers in Tampa, Florida on this 7th day of September, 2016.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record