UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION,

UNITED STATES OF AMERICA,

v.                                          CASE NO.  8:14-CR-496-T-17AEP

ROBERT WILLIAM BARTON.

_____/

ORDER

This cause is before the Court on:

| Dkt. 67 | Motion to Exclude DNA Evidence and Testimony and Request for Daubert Hearing (Barton) |
| Dkt. 71 | Response in Opposition |
| Dkt 103 | Report and Recommendation |
| Dkt. 104 | Objection |

The assigned Magistrate Judge conducted a <u>Daubert</u> hearing on August 25, 2016 and September 7, 2016, and has entered a Report and Recommendation (Dkt. 103) in which it is recommended that Defendant Robert William Barton's Motion to Exclude DNA Evidence and Testimony be denied.   At the hearing, Candy Zuleger ("Zuleger"), M.S., Laboratory Director at Trinity DNA Solutions, testified on behalf of the United States, and Dr. Elizabeth Johnson, Ph.D. testified on behalf of Defendant Barton.  The assigned Magistrate Judge concluded that Defendant Barton's arguments against the disputed DNA evidence go to the weight to be accorded to the evidence, rather than to its admissibility.

In the Motion to Exclude DNA Evidence and Testimony, Defendant Barton asserted that Zuleger's DNA testing results and expert testimony should be deemed inadmissible as unreliable and not based on sufficient facts or data as required by <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999).

Case No. 8:14-CR-496-T-17AEP

The Government responded that the DNA testing performed was routine and reliable, using a process that involved well-accepted techniques and methodologies, and Defendant Barton's arguments should go solely to the weight of the evidence rather than its admissibility.

Defendant Barton's Motion to Exclude DNA Evidence and Testimony was brought pursuant to Fed. R. Ev. 402, 403, 702, 901(b)(9), and the <u>Daubert</u> standards. In the Motion, Defendant Barton did not make any argument under Fed. R. Ev. 402, 403 and 901(b)(9); the assigned Magistrate Judge considered Defendant Barton's Motion only under the standards in <u>Daubert</u> and Fed. R. Ev. 702. (Dkt. 103, pp. 9-10).

Fed. R. Ev. 702 provides:

A witness who is qualified as an expert, by knowledge, skill, experience, training, or education may testified in the form of an opinion or otherwise if:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

The party offering the expert bears the burden of establishing qualification, reliability and helpfulness. <u>Cook ex. rel. Estate of Tessier v. Sheriff of Monroe County, Fla.</u>, 402 F.3d 1092, 1107 (11th Cir. 2005).

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u> 509 U.S. 579 (1993), the Supreme Court charged trial judges with the role of gatekeeper to exclude unreliable

Case No. 8:14-CR-496-T-17AEP

expert testimony. Daubert includes a non-exclusive checklist for use in assessing the reliability of scientific expert testimony. These factors include:   1) whether the expert's technique or theory can be or has been tested; 2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; 4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. The burden is on the party proffering an expert to show that the expert testimony is admissible. McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002). The Daubert inquiry is flexible and must be tied to the facts of the particular case. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999).  In undertaking the Daubert inquiry, the Court must focus on the principles and methodology of the proffered expert, without regard to the conclusions the expert has reached, or the Court's belief as to the correctness of those conclusions. Daubert, 509 U.S. at 595.

In the Report and Recommendation, the assigned Magistrate Judge noted that both Candy Zuleger, M.S. and Elizabeth Johnson, Ph.D. are qualified as experts on the subject matter of DNA testing. (Dkt. 67-2, pp. 11-20; Dkt. 71-1, pp. 6-7).

In Defendant Barton's Motion to Exclude, Defendant Barton did not dispute Zuleger's testing on Defendant Barton's known DNA sample. Defendant Barton challenged only Zuleger's testing and interpretation on the unknown DNA sample collected from the firearm. Defendant Barton anticipated that the Government would call Zuleger to testify at trial that Defendant Barton is the "major contributor" of the DNA on the mixed sample. Defendant Barton argued that there is no way to determine who the "major contributor" of the mixed sample was. Defendant Barton also argued that the quantity of the DNA that was used for the analysis from at least three contributors made it a "low copy number" ("LCN") result, the analysis of which is not reliable in the scientific community.

3

Case No. 8:14-CR-496-T-17AEP

In response, the Government argued that the type of testing done in this case is routine. The Government noted that Defendant Barton does not dispute that PCR/STR testing is routine and reliable, that PCR/STR testing is supported by many scientific articles, and that the majority of case law supports its admission as scientific evidence. The Government argued that Defendant Barton's contention that Trinity erred in concluding that the DNA mixture from the gun had a major contributor goes to the weight, not the admissibility, of the evidence. The Government further argued that Defendant Barton's contention that, because Trinity tested its equipment with mixtures from two or more people, Trinity could not run tests on real world mixtures that come from two or more people, is erroneous. The Government further argued that Defendant Barton's contention that Trinity conducted LCN testing is erroneous; Trinity conducted PCR/STR (polymerase chain reaction/short tandem repeats) (Dkt. 71, p. 4) DNA testing, which is almost universally accepted by the courts as reliable scientific evidence. The Government further argued that, even if Trinity had conducted LCN testing, Trinity employed methods in their analysis and calculations that were designed to remedy the problems LCN testing is purported to cause.

Defendant Barton has asserted Objections (Dkt. 104) to the Report and Recommendation (Dkt. 103).

I. Standard of Review

A. Report and Recommendation

Federal Rule of Civil Procedure 72 provides the appropriate procedure for district court review of a magistrate judge's report and recommendation. If a party wishes to challenge the recommendation, the party must "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). As the Eleventh Circuit Court of Appeals has explained, the party's objections must

4

Case No. 8:14-CR-496-T-17AEP

"specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." Macort v. Prem, Inc., 208 Fed. Appx. 781, 783 (11th Cir. 2006) (quoting Heath v. Jones, 863 F.2d 815, 822 (11th Cir.1989)). "It is critical that the objection be sufficiently specific and not a general objection to the report." Id. at 784 (citing Goney v. Clark, 749 F.2d 5, 7 (3d Cir.1984)). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).  After the Court concludes its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord Local Rule

B. Daubert

    The decision to admit or exclude scientific testimony under Daubert is reviewed for abuse of discretion.  The decision to admit or exclude scientific testimony is not an abuse of discretion unless it is "manifestly erroneous."  The abuse of discretion standard "applies as much to the trial court's decisions about how to determine reliability as it does to its ultimate conclusion."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).  In analyzing the admissibility of scientific evidence, the district court has broad discretion in determining what method is appropriate for evaluating reliability under the facts of the case.

II. Discussion

    In the Report and Recommendation, the assigned Magistrate Judge notes:

    In this case Zuleger opined from her testing: (1) a profile of Defendant's
    DNA from the known sample collected from Defendant; (2) a profile of a
    major donor of the unknown DNA sample collected from the firearm,

5

Case No. 8:14-CR-496-T-17AEP

which sample consisted of at least three donors; (3) that Defendant's known DNA profile is consistent with the major donor's profile identified from the unknown DNA same (*see generally* Govt. Ex. #3); and (4) the major donor's profile identified from the unknown DNA statistically would occur once out of every forty-one million people. To formulate her opinion, Zuleger relied upon Trinity's audited procedures, which specifically allow that major and minor donors to a mixed sample can be determined after examining all loci, and finding a "distinct contrast in signal intensities among the alleles." Govt. Ex. 1 at 99. Signal intensities or peak heights reflect how much of one allele or another is present in a sample. Trinity's procedures require an analyst to examine all of the locations in a given sample before determining whether a major donor can be identified. *See id.* Notably, major or minor donor analysis is not limited to mixtures of only two individuals, so long as the "major donor peaks are at a much higher intensity than the multiple minor donor alleles." *Id.*

(Dkt. 103, pp. 10-11).

A.   Defendant Barton's Objections

In his Objections, Defendant Barton raises the same issues considered by the assigned Magistrate Judge in making a recommendation as to Defendant Barton's Motion. Defendant Barton's Objections are directed to Zuleger's interpretation of the data in finding a major donor in the unknown DNA sample collected from the firearm. Defendant Barton disagrees with the conclusions of the assigned Magistrate Judge, but does not specifically explain why the conclusions in the Report and Recommendation are erroneous.

1. Reliability

A. Defendant's Contentions

Defendant Barton argues that Defendant Barton sufficiently demonstrated that the Government's opinion testimony was unreliable. Defendant Barton contends the

Case No. 8:14-CR-496-T-17AEP

Court should have focused on the specific conclusions reached by Zuleger rather than the generally accepted principles of PCR/STR DNA testing, and should have concluded that there was too great an analytical gap between the data and the opinion proffered. Defendant Barton contends that Zuleger could not scientifically support any of the conclusions she reached in this case; Zuleger proffered no scientific basis for any of her opinions related to the DNA sample.

Defendant Barton argues that the assigned Magistrate Judge erroneously applied the Daubert principles in determining that Defendant Barton's arguments go to the weight and not the admissibility of the evidence. Defendant Barton argues that the Court's acceptance of the Government's contention that the validation studies performed by Trinity relating to two person mixtures of DNA could be applied to mixtures of three or more persons without any scientific proof is erroneous, because scientific principles require methodologies to be reliable, reproducible and peer reviewed. Defendant Barton argues that Trinity lab did not perform any validation studies on DNA mixtures from three or more persons to determine whether correct calls could be made as to major and minor contributors, and on this basis alone, the evidence should have been precluded. Defendant Barton argues that the Government was allowed to rely on validation studies performed by the manufacturer of the testing kit that was used by Trinity in testing the DNA sample. Defendant Barton further argues that the assigned Magistrate Judge merely "accepted" Zuleger's testimony that no validation studies were necessary in her lab on three or more person mixtures.

Defendant Barton further argues that the Court's acceptance of the Government's assertions that the DNA sample was interpreted "with caution," was erroneous in light of the fact that the sample demonstrated stochastic effects and was in the low copy range. "Stochastic effects" are random errors that create inaccuracies in DNA testing.

7

Case No. 8:14-CR-496-T-17AEP

Defendant Barton argues that the testimony revealed that Trinity did nothing different than Trinity does with any other sample. Defendant Barton argues that Trinity ignored the inconsistent and imbalanced peak heights across the entire DNA profile that should have been red flags and sent off clear warning signals to the lab that the sample was in the danger zone of unreliability. Defendant Barton argues that Trinity "cherry picked" which loci it chose to analyze, and used only alleles that were common to both the known Barton sample and the mixed sample, and Trinity ignored loci where the known Barton sample contained alleles that were not detected in the mixed sample. Defendant Barton contends that if Trinity had analyzed the entire DNA profile with caution, Trinity would have concluded that no major contributor of DNA could be determined from the mixed sample. Defendant Barton argues that, because no major contributor can be determined, any statistical calculations based on the sample are not scientifically valid.

2.    Discussion

In the factual findings of the Report and Recommendation, the assigned Magistrate Judge explains in detail the accreditation process, the standard steps for DNA testing that were performed, the potential difficulty with small sample size at the quantitation step, what testing Trinity performed at the amplification step, how Trinity applied its procedures at that step, the validation studies that were performed, and how Trinity developed its interpretative guidelines upon which Zuleger relied in interpreting the data from the unknown data sample collected form the firearm to identify and opine a major donor for the unknown sample.

The Court notes Defendant does not dispute that PCR/STR DNA testing is routine and reliable, is supported by scientific articles, and the majority of case law supports its admission as scientific evidence.

Case No. 8:14-CR-496-T-17AEP

Defendant Barton does not define LCN testing. The Government has argued that LCN testing was not done in this case, but even if it was, Trinity employed methods in their analysis and calculations designed to remedy the problems that LCN testing is purported to cause.

In the Report and Recommendation, the assigned Magistrate Judge notes that the stochastic effects associated with testing a small sample size include:

1. allele drop-out (when one or both allelic copies at a locus fail to be amplified by the polymerase chain reaction);

2. allele drop-in (contamination with extraneous alleles, either at the point of recovery of the sample or during laboratory analysis of the sample);

3. peak height imbalance (inconsistent peak heights for the true alleles, which may result in extraneous alleles at some loci that produce higher peaks than true alleles); and

4. stutter (when the DNA is replicated, some of the alleles may become altered, creating a small amount of a different allele that is then detected in the analysis of the sample, thereby potentially creating a false allele in the resulting DNA profile that does not correspond to the donor's true profile.

(Dkt. 103, pp. 5-6).

Trinity accounts for dropout in a conservative manner. Where dropout is suspected, the statistical calculation does not utilize data from that allele. This is a generally accepted statistical approach in the forensic DNA community. (Dkt. 71, p. 13). That is what was done in this case. The data from the gun swab generated data at 20 different loci, but only 10 loci were selected to use in Zuleger's statistical calculation. This conservative approach benefitted Defendant Barton. Further, Trinity used a statistical calculation called the modified random match probability method, the

9

Case No. 8:14-CR-496-T-17AEP

method designated in the Trinity procedures manual to be used where dropout is a possibility. (Dkt. 71, pp. 14-15 ).

In the Report and Recommendation, the assigned Magistrate Judge noted that Zuleger only utilized data from 10 loci for her statistical calculations, which resulted in a more conservative calculation. (Dkt. 103, p. 6).

Defendant Barton contends that Zuleger "cherry-picked" data and ignored other data. The Court notes that Trinity followed its procedures and interpretative guidelines in reaching its conclusion. The applicable procedures required that all loci be evaluated, and noted that some loci may show ambiguous data, such that a major or minor contributor may only be determined at some of the loci. The applicable procedures provide that major/minor donor calls are made on a "per sample" basis. In this case, Trinity concluded that there was sufficient data, and called Defendant Barton a major contributor.

Daubert does not ......require that every conceivable application of a scientific methodology be tested. U.S. v. Morgan 53 F.Supp.2d 732 (S.D.N.Y. 2014). The Court finds that a challenge to Zuleger's opinion should be done on cross examination, rather than via a pretrial motion to exclude. Quiet Tech. DC-8 v. Hurel-Dubois UK Ltd., 326 F.3d 1333 (11th Cir.)(holding that failure to account for allegedly relevant data in generating opinion was a matter of weight, not admissibility).

Case No. 8:14-CR-496-T-17AEP

2.    Magistrate Judge failed to consider United States v. McCluskey, 954
      F.Supp.2d (D. New Mexico 2013) in Issuing Report and Recommendation

Defendant Barton argues that the assigned Magistrate Judge erred in failing to
consider and apply United States v. McCluskey, 954 F.Supp.2d (D. New Mexico 2013)
in rendering his Report and Recommendation.  In McCluskey, the District Court granted
the defendant's Motion to Exclude DNA and Serology Test results in part, as to LCN
DNA testing.  The District Court held that:

1.    Government's disclosure sufficiently conveyed DNA expert's
      opinions and the bases and reasons for those opinions;

2.    Government witness was qualified to testify as an expert in
      DNA analysis;

3.    PCR/STR method of DNA typing was reliable and
      admissible, and any challenges to the particular procedures
      and instrumentalities used in applying that method went
      primarily to the weight of the DNA evidence and not to
      admissibility; and

4.    Results of low copy number (LCN) DNA testing by New
      Mexico Department of Public Safety (NMDPS) Laboratories
      were not sufficiently reliable to be admissible.

In the Report and Recommendation, the assigned Magistrate Judge noted U.S.
v. McCluskey, 954 F.Supp.2d 1224 (D. New Mexico 2013) and People v. Collins, 49
Misc.3d 595 (Sup. Ct. Kings Co. 2015), but was more persuaded by U.S. v. Morgan, 53
F.Supp.3d 732 (S.D.N.Y. 2014).  (Dkt. 103, p. 11).

The Court has independently reviewed the pleadings and the record.  The Court
has considered Defendant Barton's Objections.  After consideration, the Court
overrules Defendant Barton's Objections and adopts and incorporates the Report and
Recommendations by reference.  Accordingly, it is

Case No. 8:14-CR-496-T-17AEP

ORDERED that Defendant Barton's Objections (Dkt. 104) are **overruled**, and the Report and Recommendation (Dkt. 103) is **adopted and incorporated by reference**.  Defendant Barton's Motion to Exclude DNA Evidence and Testimony (Dkt. 67) is **denied.**

DONE and ORDERED in Chambers in Tampa, Florida on this ___14th___ day of September, 2016.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record