UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.   CASE NO. 8:14-CR-496-T-36AEP

ROBERT WILLIAM BARTON

REPLY TO THE UNITED STATES' RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE

Movant, Robert Barton, hereby files his Reply to the United States' Response in Opposition to Defendant's Motion for Compassionate Release. Movant herein will refer to his Motion as his "Reply" and the United States' Response in Opposition as the "Response."

The Response utilizes three-and-a-half pages to pay lip service to the Bureau of Prison's ("BOP") response plan to the COVID-19 Pandemic. "The BOP continues to take significant measures to protect the health of the inmates in its charge." Response at 3. "Taken together, all of these measures are designed to mitigate sharply the risk of COVID-19 transmission in BOP institutions." Id. at 7. Despite these "significant measure" to "mitigate sharply the risk of ... transmission," the virus is running rampant in nearly every BOP institution. See Appendix A. See also United States v. Somerville, 2020 U.S. District LEXIS 93935 (U.S. Dist. Court: Western Dist. of Pennsylvania). "Even under normal circumstances, prisons are tinderboxes for infectious disease.... some medical professionals have warned that the highly infectious nature of COVID-19... could amount to a ticking time bomb... where... the population lives and sleeps in large dormitory halls lined with bunk beds sharing bathrooms and shower facilities." Id. at 23-25. And United States v. Coles, 2020 U.S. Dist. LEXIS 72327 (U.S. Dist. Court: Central Dist. of Illinois). "Social distancing can be difficult for prisons..." as individuals "...live in a dorm-style design which guarantees that inmates remain in close proximity to one another." Id. at 15.

The Response argues that "...the mere existence of COVID-19 and the 'possibility' that it 'may' spread to a particular prison alone cannot independently justify compassionate release." Response at 12 (emphasis added). At the time of Barton's request for Compassionate Release, cases had already been reported at Coleman Low where he is incarcerated. As of August 8, 2020, Coleman Low has reported that 135 inmates and 21 staff members have tested positive for the COVID-19. Not only has the virus "spread to [his] particular prison," it

1

has infected hundreds of inmates. See, also, United States v. Riccardi, 2020 U.S. Dist. LEXIS 131085 (U.S. Dist. Court: District of Kansas). "Today, July 24, 2020, the coronavirus page of the BOP's website indicates that 155 inmates at FCI Coleman Low have active COVID-19 infections.... This outbreak suggests that the BOP's preventive measures have not been successful at the facility... [Defendant's] underlying health conditions which increase his risk of serious harm from the virus, and the recent outbreak at the facility, where it appears the measures to contain the virus have been ineffective, provides an extraordinary and compelling reason for relief..." Id. at 7-8.

Also, due to the second inmate death at the complex, the Office of the Inspector General ("OIG") conducted a medical evaluation of Coleman Correctional Complex the week of August 10, 2020. As a result, pending the anticipated report pointing out failures to comply with stipulated response measures, the Complex Warden was re-assigned by the OIG. See the report generated by Stephanie Coueignoux at Appendix B.

The Response goes on to state, "To classify COVID 19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to the BOP's organized and comprehensive anti-COVID-19 regimens...." Response at 13. Case after case after case has classified the COVID-19 Pandemic as exactly the case of an extraordinary and compelling reason consistent with the text of the statute and the policy statement. "The spread of the novel coronavirus... has presented extraordinary and unprecedented challenges... and poses a serous issue of prisons." Coles at 15. "Although the presence of ... COVID-19... in prisons arguably could 'alone' establish extraordinary and compelling reasons, [Defendant] has been incarcerated at FCI Danbury, one of the hardest hit federal prisons." Somerville at 9 (emphasis added). Danbury had an infection level that reached 91 (as opposed to Coleman's current 137).

Despite the BOP's alleged "organized and comprehensive anti-COVID-19 regimens," the BOP has received harsh public backlash for its handling of the pandemic and its systemic refusal to utilize the home confinement portion of the CARES Act. Its own employees have filed class-action lawsuits for failure to protect them and several inmates, even after being denied a Reduction in Sentence by the BOP have died from COVID-19 while awaiting the Court's intervention. See Appendix C.

Next the Response attacks Movant's medical conditions. "...[Barton] argues that [his] conditions place him at a heightened risk for severe COVID-19 infection." Response at 14. What Mr. Barton actually claimed was severe risk of complications if he should contract the virus. See Barton's Motion for Compassionate Release. The Response concedes, however, that "...[Barton's] heart related conditions and obesity possibly

2

fall within the risk factors listed by the [CDC] for increased risk of serious illness." Response at 14. Yet, "... [Barton's] claim of heart disease and heart attacks are inadequately supported by independent evidence." Id.at 15.

Movant has little access to his outside medical records and the BOP's medical history for him only dates back three years. Mr. Barton has attached a copy of his outside visit to an "independent" medical professional showing an "Active Myocardial infarction (Confirmed)" and a history of "Chest Pain." See Appendix D, pages 4 and 7 respectively.

The Response also attacks Barton's claim of obesity, stating that he "...provides no evidence of his weight or height." Response at N.5. Yet, a an attachment to the Response, as of October 17, 2019, Barton's weight was recorded by the BOP as 206.5 lbs. His height, according to his BOP ID is 5'8". "At 5'8" and more than 220 lbs, Mr. Somerville has a BMI that qualifies him as being obese." Somerville at 21. Mr. Barton asserts that after 16 weeks of being fed high calorie "bag meals" and being confined to his unit with no opportunity to exercise, he has gained significant weight.

The Response attempt to mitigate Barton's obesity by the lack of "explanation as to whether the condition is manageable...," Response at N.5, as if manageability as any bearing on the condition being a contributing factor to complications after contracting COVID-19. "Collectively, this evidence [, to include hypertension and obesity,] is enough to satisfy the Court that Mr. Somerville does indeed face a heightened risk of serious illness or death if infected with COVID-19." Somerville at 21.

Lastly, the Response states, "Barton would pose a danger to public safety if released." Response at 16, pointing to "... a long history of violence and a lengthy list of violent convictions." Id. The Response mischaracterizes the length of time since Barton's violent past as a "long history of." It is true, Mr. Barton has had a troubled and violent past. But this history is just that; in the past. Each instance of violence the Response cites is from 1990; nearly thirty years ago. Even if Mr. Barton had not been released early from prison in the past, he would have been released from prison by now. See United States v. Osorto, 2020 U.S. Dist. LEXIS 82661 (U.S. Dist. Court: Northern District of California). "What if a global pandemic posses of mortal risk to an immuno-compromised inmate who nobody intended to die in jail?" Id. at 1. "Why would federal prosecutors exercise the tremendous discretion entrusted to them with such a lack of compassion? Defendants released through the compassionate release program are a tenth as likely to recidivate as the average federal prisoner." Id. at 18, quoting Inspector General Report of Prison's Compassionate Release Program 11 (2013) at 4696-50.

The Response also points to Mr. Barton's past use of "methamphetamines [and] opiods," but adds "... which the defendant has presumably stopped since his imprisonment." Response at 15. Mr. Barton asserts that he has undergone numerous 'random' drug screenings and has passed each and every one of them (evidenced by his lack of Disciplinary Reports stating a failure of such).

In a last-ditch effort, the Response undermines the BOP's primary purpose: rehabilitation. Mr. Barton has completed several programs and has secured a job with the BOP as a UNICOR worker. He has served thus far without any disciplinary reports and has systematically worked his way from Medium custody to being qualified to be transferred to a Camp where he would be able to interact with the public he is allegedly a danger to. His PATTERN score placed him at a LOW risk of recidivism. See Appendix E. And, his most-recent offense was non-violent; a simple possession of a firearm. Mr. Barton, during his arrest, did not resist or exude violence in any way.

The BOP deems Movant little risk to the public. "... the Court finds that the risk of [Defendant] engaging in further criminal conduct is minimal and can be managed through home confinement and the terms of his supervised release." United States v. Williams, 2020 U.S. Dist. LEXIS 63824 (U.S. Dist. Court: Northern Dist. of Florida). As quoted herein, Williams, Coles, and Somerville were all classified as Armed Career Criminals just as Movant and Williams was sentenced to Life in prison. All three defendants were granted compassionate release based on similar medical conditions as Movant and in light of the COVID-19 pandemic.

Movant contends that, if he contracts the virus, the medical care at Coleman Low is so understaffed and inadequate that such an event would be life threatening. Medical has been cut to strictly Emergency ONLY care and all other issues are more-or-less ignored. And, as in the other two cases of death here at Coleman Complex, by the time he transfers to an outside medical facility, it may be too late. See Appendix F.

THEREFORE, Movant respectfully requests this Court exercise its discretion and GRANT his Motion for Compassionate Release based upon the foregoing facts and the facts laid out in his original motion. Movant is at the mercy of this Court and its decision to show compassion in light of the pandemic and his conditions that would likely lead to serious illness or death should he contact the virus that is running rampant at his institution and has already collected the lives of two of his fellow inmates.

Respectfully Submitted,

*Robert Barton*

Robert Barton

Certificate of Service

I HEREBY CERTIFY that on the date printed below a true and correct copy of the foregoing Reply was via the United States Postal Service, pre-paid, to the Clerk of Court; and that upon receipt, the Clerk shall service all other parties via the CM/ECF system.

DATED: 8-26-2020

*Robert Barton*
Robert Barton #62661-018
Unit A-1
Federal Correctional Complex - Low
P.O. Box 1031
Coleman, FL 33521